IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,                  OPINION AND ORDER

v.

                                      22-cr-64-wmc

JUVENTINO LARA PLANCARTE,

                Defendant.

---

On January 20, 2022, defendant Juventino Plancarte was riding in the backseat of a Buick in an area of La Crosse, Wisconsin, known for the sale and purchase of drugs. Because of the way the driver of the vehicle looked and the way the vehicle was moving, La Crosse Police Department Investigator James Mancuso directed officers to stop the vehicle for violating a prohibition on tinted windows. Once stopped, the passenger in the vehicle further provided officers inconsistent answers and behaved suspiciously. Thus, when La Crosse Police Department Officer Aaron Westphal and his K9 partner, Loki, arrived on the scene, he commanded Loki to sniff the Buick, and Loki gave a positive alert for drugs at the trunk of the Buick. At that point, officers opened the trunk and recovered a backpack that contained 10.9 pounds of methamphetamine.

Plancarte was then charged in this court with possessing methamphetamine with intent to distribute and running a drug house.[1] In response, Plancarte's counsel filed a motion to suppress evidence obtained from the search of the vehicle. (Dkt. #16.) After an evidentiary hearing, Magistrate Judge Stephen Crocker issued a Report and

---

[1] Others in the vehicle appear to be facing state-court charges on related conduct.

Recommendation ("R&R") to deny Plancarte's motion to suppress. (Dkt. #41.) In particular, Judge Crocker relied upon the law of this circuit that "an alert from an adequately trained and reliable dog is sufficient to give rise to a finding of probable cause." *United States v. Bentley*, 795 F.3d 630, 635 (7th Cir. 2015). Based on the totality of the circumstances, Judge Crocker also found that there was probable cause to search the car despite the chance that Loki may have alerted to legal substances.

In objecting to the R&R (dkt. #48), Plancarte maintains his position that because CBD and certain hemp-derived products are now legal, and because Loki was trained to alert to those products, the officers lacked probable cause to search the vehicle. However, Plancarte offers no legal authority for the court to disagree with Judge Crocker. Although the court echoes Judge Crocker's sentiment that law enforcement would be wise to retrain drug-detecting dogs, including "retraining" dogs like Loki, *Bentley* remains the law of the circuit on which the officers here can continue to rely in good faith. In any event, Plancarte has identified no error in Judge Crocker's alternative, totality-of-the-circumstances analysis, nor can this court. Accordingly, the court will overrule plaintiff's objections, accept the R&R, and deny his motion to suppress.

OPINION[2]

Under 28 U.S.C. § 636(b)(1), the court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," subject to appropriate deference with respect to any findings of

---

[2] The material facts underlying the charges in this case, as well as the evidence presented at the hearing are undisputed and set forth in detail in the R&R.

2

credibility he may have made during the evidentiary hearing. *See McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 665 (7th Cir. 2021). Here, plaintiff objects to both of Judge Crocker's principal conclusions.

*First*, whether a reasonably well-trained officer would have known that the search was illegal considering binding appellate precedent. *United States v. Velazquez*, 906 F.3d 554, 560-61 (7th Cir. 2018). Relying on the Seventh Circuit's holding in *Bentley* that an alert from an adequately trained and reliable dog supports a finding of probable cause, Judge Crocker concluded that the officers had good reason to rely on Loki. In particular, he found that the evidence presented at the hearing showed that Loki was adequately trained and reliable in the field after comparing Loki's 90% success rate in the field to the 59% success rate of the dog challenged in *Bentley*. (R&R (dkt. #41) 11 (citing *Bentley*, 795 F.3d at 636).)

Judge Crocker also properly rejected defendant's specific argument that Loki was unreliable solely because he had been trained to detect some, now-legal substances, like CBD products. For one, as Judge Crocker noted, since 2018 federal statutes regarding hemp and state legalization of possession of THC, no Supreme Court or Seventh Circuit decision has even suggested that law enforcement agencies may no longer reasonably rely on alerts by certified, drug detecting dogs. Certainly, as Judge Crocker acknowledged, the legalization of THC products might prompt the Supreme Court to revisit its reasoning in *Illinois v. Caballes*, 543 U.S. 405, 410 (2005), that a dog sniff was not a search, arguably in part because the dog was trained to detect only unlawful conduct. This uncertainty does not justify a district court setting aside long-standing Supreme Court and Seventh Circuit

3

precedent, much less to do so retroactively to undermine law enforcement's reliance on *Caballes*. (R&R (dkt. #41) at 12-13.)

Alternatively, plaintiff directs the court to a decision from the Colorado Supreme Court, *People v. McKnight*, 2019 CO 36, ¶ 7, 446 P.3d 397, 400. In that case, the court agreed that a dog sniff constituted a search because it can detect lawful activity in that state. However, the *McKnight* decision was grounded in the Colorado State Constitution, and as the court explained, "[m]arijuana is not only decriminalized in Colorado, it is legalized, regulated, and taxed." *Id.* ¶ 42, 446 P.3d at 408. Moreover, the court acknowledged federal decisions from Colorado declining to conclude that dogs who alert to legal substances are more akin to the thermal imaging technology in *Kyllo v. United States*, 533 U.S. 27 (2001), concluding "that is precisely why we rest our holding on the Colorado Constitution, not on the Fourth Amendment." *Id.* ¶ 47, 446 P.3d at 410. Accordingly, that decision not only lacks precedential value, but it is distinguishable as to the applicable legal principles and facts.

Finally, Plancarte reargues that exclusion is necessary because the dog sniff is the product of a "systematic Fourth Amendment violation." Again, Judge Crocker rejected this assertion because the inquiry is whether *existing* caselaw supports suppression, not whether that caselaw is subject to question. Plancarte's objection does not give the court any legal or logical basis to disagree. More importantly, it certainly does not support *suppression* of evidence discovered based on an officer's good faith reliance on a trained, drug detecting police dog.

4

*Second*, Judge Crocker reviewed the totality of the circumstances, concluding that the officers had probable cause to search the vehicle. Following decisions from the Tenth Circuit, Eastern District of Tennessee and North Carolina, Judge Crocker rejected defendant's argument that Loki must be retired completely because his training includes marijuana detection. (R&R (dkt. #41) 14-15 (quoting *United States v. DeLuca*, No. 20-8075, 2022 WL 3451394 (10th Cir. Aug. 18, 2022); *United States v. Hayes*, No. 3:19-CR-73-TAV-HBG, 2022 WL 4034309 (E.D. Tenn. 2020); *State v. Walters*, 881 S.E.2d 730 (Ct. App. 2022)). Judge Crocker found this holding particularly appropriate in this case because: (1) Loki had never alerted to hemp in the field and *maybe* alerted only to CBD oil once; (2) the specific police using Loki in this case had never encountered anyone possessing only hemp or legal CBD; and (3) in Investigator Mancuso's experience, his cases seldom involved unlawful marijuana. Judge Crocker further recounted the evidence of what Mancuso considered in deciding to stop and search the Buick: the driver's reaction to seeing a state trooper on the interstate; the Buick was driving from a methamphetamine source in an area in Minneapolis, Minnesota, to a well-known drug zone in La Crosse, Wisconsin; the unusual maneuvers by the vehicle that were consistent with a drug courier looking for or waiting for a contact; and once the vehicle was pulled over, the passenger's inconsistent answers and nervousness. Thus, Judge Crocker concluded that even accounting for the "slim possibility" Loki might be alerting to hemp or CBD oil, the other information before Investigator Mancuso provided probable cause to conduct a search, noting that "[p]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." (R&R (dkt. #41) 16.)

5

Defendant's objection to this finding is unpersuasive. In characterizing the facts viewed by the officers as "actions that could gain an officer's attention," as opposed to behavior suggesting a reasonable probability of criminal activity, defendant does not address the undisputed facts as recounted by Judge Crocker. Instead, defendant relies on Mancuso's testimony that he originally did not have reasonable suspicion of drug activity to pull over the car, directing officers to stop the vehicle for a legitimate, tinted-window violation. More importantly, defendant challenges Judge Crocker's consideration of Loki's alert as part of the probable cause analysis. In particular, citing *Florida v. Harris*, 568 U.S. 237 (2013), defendant argues that Loki could not reliably indicate the presence of contraband because he cannot distinguish between contraband and legal THC products. However, Judge Crocker addressed this, noting that under *Harris*, the question about the reliability of a dog's alert is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime," 568 U.S. at 248, and then doing just that.

In particular, Judge Crocker again considered not just that Loki's success rate is 90% in the field, but also that: Loki had never alerted to hemp in the field and *may* have alerted to CBD oil just once; police in an area known for meth trafficking had never encountered anyone possessing only hemp or legal CBD; and Investigator Mancuso's cases generally did not involve unlawful marijuana. (R&R (dkt. #41) 14.) Critically, defendant once again does not account for the fact that Loki alerted under circumstances in which legal THC products were *not* present at all, nor does he offer any legal authority or evidence

6

undermining Judge Crocker's careful parsing of Loki's reliability in the specific circumstances of the search in this case. Instead, Plancarte cites websites reporting the ubiquity and portability of CBD, apparently to show the likelihood that Loki will alert to this product. However, this is *not* the evidence or circumstances that Mancuso was addressing in January of 2020, and it is not a reason to overrule Judge Crocker's probable cause finding. Accordingly, the court will overrule defendant's objections, accept Judge Crocker's R&R, and deny the motion to suppress.

ORDER

IT IS ORDERED that:

1) Defendant Juventino Plancarte's objections to the report and recommendation (dkt. #48) are OVERRULED.

2) The Magistrate Judge's report and recommendation (dkt. #41) is ADOPTED, and Plancarte's motion to suppress (dkt. #16) is DENIED.

Entered this 23rd day of May, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge